and Shea Harrelson. Mr. Mead. Good morning, Your Honors. May it please the Court, my name is John Alden Mead, Counsel for the Appellants, James Agee and Shea Harrelson. I'd like to spend my time divided in two parts with the two errors that we've ascribed, but of course I don't invite any questions. I think we've covered a lot of things well in our brief, although there are a few things I think I could clarify a bit more fully. But as you know, this case, our clients were terminated without cause nine years ago, filed suit seven years ago, and two years ago, pretty much today, received their state court judgment after a trial in state court. Thereafter, AIG filed a deck action in the fed court a year ago, about today, got the adverse decision that we are appealing from now. When I was thinking about this case, it kind of reminded me of that story, the strange case of Dr. Jekyll and Mr. Hyde. You know, you have on the one hand, the heavily analytical insurance contract interpretation, which is the Dr. Jekyll part, and it's subject to a de novo review, where we're really just saying, what's the right answer? Almost without regard to anything that happened in the district court, the issue of contract interpretation is one that we can engage in de novo and don't really need to look too much at what has happened. But the second part is the Mr. Hyde part, where things really, in our view, went off the rails at the district court. We don't think you even need to reach it if you find the first error having been one, but nevertheless, even were you to not find an error in the first instance, we believe that some of the mistakes made by the district court, nevertheless, weren't remanded. So this case is about an exclusion in an insurance policy, and the important things to keep in mind at every step of the analysis are the rules of construction. Essentially, AIG, as the insurer, has the burden of proof to prove that an exclusion applies. Furthermore, any ambiguities are to be resolved in favor of coverage. Therefore, it is AIG's burden in this case to show that there is not a reasonable or plausible interpretation that provides coverage. Once we've offered one, and we have, it is AIG's burden to show how it is implausible, unreasonable, or contradictory to the policy. That is a burden that AIG never undertook, much less carried. So to say that, our obligation was really only to show a plausible reading, not even the most likely one. But we believe we've done far more than that. We've shown not only that it's plausible, but the more plausible, and in fact, as I'll get into a little later, it doesn't always come out in our brief, I think it's, the more I thought about it, the only possible reading. And so what do we have to get to? There's been a little disagreement on what the real issue is here. For us, it's the words express written contract. That is what matters here. Both AIG and ultimately the district court analyzed the question as with or without the contract, which is the wrong question. The policy language uses express written contract repeatedly throughout it. And as we've cited in our brief, in the insurance case, Louisiana Supreme Court in Maryland, the Maryland Calgary company case, that the words have to be given their meaning and not just read out to be mere surplusage. And so what does express written mean? Well, it's to be distinguished from a contract that is not express or written. So that could be typically an oral contract, right? And here, the exclusion talks about how liability would be excluded pursuant to an express written contract, unless liability would have attached without such express written contract. So to give those words meaning, you have to investigate whether or not you could have, liability would have attached. And this is an important point in our brief. When we say this is an unusual policy, when you ask the question, would liability have attached, you're inviting, and actually, in fact, requiring a hypothetical, which brings you into a land of ambiguity already. I would again say that AIG never undertook this analysis. Well, the first question I was going to ask you is, did your client have an express written employment contract with AIG? And if they did not have an express written employment contract, would they have recovered anything in state court? And that's the question you told me is irrelevant. Is that your position, that that's not relevant? Oh, I'm not sure it's not relevant. I think you mean to say UTC is who they had their express, they had an express written employment. Yes. Would they have recovered anything in state court if they didn't have an express written employment contract? Absolutely. Most certainly. In two ways. And fast forwarding right to the important point I want to make. So we believe that we can establish that liability would have attached in the absence of an express written contract in two ways. One isn't even a hypothetical. We did, in fact, through the Louisiana Wage Payment Act, which does not require as an element in the cause of action, it does not require an express written contract. So, and as you also know, there's no rule in Louisiana employment law generally that an employment agreement be written, and that's why the Louisiana Wage Payment Act doesn't require it. So we did attach liability without an express written contract through the operation of the Louisiana Wage Payment Act, which I might add contains more damages because of the statutory penalties than were available under a pure breach of contract claim. So you would have had an action under the provisions of the Louisiana Wage? Which we succeeded on, Your Honor. Right. Okay. But then what do you do with the King Virginia University health care system case that says, as such, payments that are not provided by the employment contractor, thus not governed by the provisions of the LWPS? Oh, the LWPS, yes. Well, for that one, I think the answer to that is it wasn't investigating whether it was the express written . . . you have to go back to the policy language. That's the policy language here that controls. And so I'd like to . . . this is probably a more direct answer to your question. Even without the operation of the Louisiana Wage Payment Act, even if we'd only brought a breach of contract claim, you still nevertheless have to engage in the same hypothetical. Would liability have attached had the employment agreement not been expressed or written? Unequivocally, yes. So we didn't even need to bring the Louisiana Wage Payment Act in order to show that, as we said, and even the district court recognized at one point, that the fact that it was written down shortened discovery. We didn't have to have a he said, she said about the terms of the bonus or commission structure. So there was less to fight about in that regard, but there was certainly no requirement that it be expressed or written. The reading that AIG has offered and that the district court unfortunately slipped into by analyzing it just without the contract, we're not putting any meaning to the words express written, it actually reads out the final clause of the exclusion entirely. So this isn't as well fleshed out in a brief as maybe it could have been, but I'd like to turn your attention to page four and five of our original brief. The top of page five has the carve back and it says, you know, the exclusion is for any alleged contractual liability under an express written contract agreement provided, however, that this exclusion shall not apply to any, and then sub four says, liability which would have attached in the absence of such contract or agreement. Now, under AIG's and the district court's analysis, this last clause is completely superfluous. Their analysis is that once there is an express written contract, boom, you're done, it's over. There is nothing else left to investigate. Well, that, if that were true, this cause sub four here at the top of page five of my brief is completely superfluous. So I put it to AIG, I'm thinking of Looney P.S. was the way it referred to it. I don't know if the statute's been changed since 2011. It said that you, that the LWPS, LWPA only applies to the terms of a contract and you got to have those terms. Now it can be an oral contract, which is your point, but this exclusion you just talked about, the exclusion itself refers to express written. The exception to it says in the absence of an express contract, not an express written contract. So it seems to me that is consistent with Looney Ricks, which is arguably, and I want you to respond to it, which is to say if you don't have the terms, you can't use the LWPS, whether it's in a written contract or an oral contract. And this exception to the exclusion is just referring to express contract. So even an oral contract is an express contract. So help me with all those pieces. I take your point, except the antecedent there is such, and this is clearly a reference to the sentence, the clause just above it, because it says provided, however, this exclusion shall not apply to any liability which would have attached in the absence of such express contract. I have interpreted your brief and I'm interpreting what you're saying now, that your position turns almost exclusively on the fact that the exclusion refers to a written contract. Yeah, I think that's correct, Your Honor. And if we don't buy it, you're in a lot of trouble. I think that's fair. Sure. I have alternative arguments, but yes, that is the thrust of our argument. And I believe that while I acknowledge that you potentially could read it the way you have, if there are competing explanations, we get the win. You have to construe it against the insurer and in favor of the insured. And indeed, the district court did two days before trial, and as we'll get to, there was no factual development to change the basis for that. But in any event, the other thing I would say about that, Your Honor, is that I think in the interpretation you offered, it still renders that final clause completely superfluous, because in the event there is an express written contract, there is no coverage. There's no way to give operation. Like a community rixonaut, you get into copyright law or something else entirely that can create the obligation, as opposed to the contract itself. True, but it has to be embraced by both, right? So this is a liability which is embraced by an express written contract. It is the same liability also embraced by something other than an express written contract. So what else? Meaning the LWPA? That is one, or if just assuming, would we have won had the contract been oral? And that  So I know I've saved some time for rebuttal, so I'll try to go quickly through the abuse of discretion and what happened in the district court. There were a flurry of motions right before trial, and well after the pretrial order had been filed, the court was asked to revisit its denial of cross motions for summary judgment. And this is, in fact, an area where AIG and we agreed on what the relevant facts were for purposes of analyzing this exclusion. There was no dispute as we both agreed it was right, that there was nothing factual to be developed at trial. The court denied and then re-denied it and said emphatically, and it's hard to get around it. It's what we started our argument with. The court states here that the breach of contract exclusions in the EPL and D&O sections of the AIG policies do not bar coverage for the state court judgment because coverage exists when liability would otherwise attach up to the agreement. The court so found that liability would attach absent the agreement by virtue of the WLPA and therefore finds no manifest error of law or fact on this issue. That's a pretty convincing argument, and the court later opined that, well, in denying summary judgment, perhaps forgetting that we had cross motions for summary judgment. Nevertheless, the point that you can't win anything in the denial of summary judgment, I tried to look that up. It's a little strange. I couldn't really find anything definitive on it. But even assuming it's true, why write it? Why say that? Why be so definitive two days before trial on major issues? You don't have much time left. Let me kind of cut to the quick, I think, on this. It seems to me what your point would be is district judge says that issue is off the table. You therefore did not present any evidence regarding what, if you're going to rule on the basis of contract. But your brief, page 18 is what I wrote in my note, you say there are no fact issues on it. That's correct, Your Honor. So they're really, it's just a question of law, whether the district judge surprised you or not. It doesn't seem to me that that faults what happened. We still have a properly preserved, presented, properly presented question. I agree, Your Honor. In the event that you were to see that there was a factual issue, I don't think there is one. I really don't. And certainly when you read the findings of fact and conclusions of law, the court does nothing to explain what happened at trial in order to change its opinion. And the witness itself was a lawyer for AIG offering legal conclusions when it, and we objected. Well, your continuing objection really was to legal conclusions. Yes, we did. Absolutely. And this court is, you know, if you were to find a factual question, this court could also look at that testimony and say, these are just legal conclusions. And this is purely within the province of the court. We did object. The court said, I understand. Ms. Trice, they can each have two more minutes, please. Both sides. Excuse me? I'm giving you two more minutes because we, and I'm giving the other side an extra two minutes so that you can answer these questions because we're not done yet. Much appreciated. So in that light, were there to be a factual issue, and this is why it's an alternative argument for us, we believe we were deprived the opportunity to meet it head on. Because when we, we did object, the court just said, I understand. It's unclear that the court actually referred or relied on anything because it doesn't cite anything in its findings. What difference does it make? This is a bench trial. The court had a lot of time to think about this. Had some, just, even if the court just changed its mind, the court can just change its mind after a bench trial on the law. Sure. There's no rule that you have to have evidence that changes the court's mind. You could just change your mind, and as long, he says I changed my mind. That's, I've considered, I've had a lot of time to think about this now, and I've changed my mind. There's nothing erroneous about that in a bench trial context, is there? So if it's only a conclusion of law. But you said it is. I agree. And I'm presenting this as an alternative in the event your honors think that there was a factual issue for trial. But if we don't think there's a factual issue. Then this is all beside the point. I'm trying to cover my bases here because the court allowed testimony which assumes that the court saw a factual issue. But you said it was legal conclusions anyway. Absolutely. I want you to consider this issue done. You got anything else for us? No. The remainder would be, I would like to just note that while, and I'll get into this on rebuttal. The alternative bases that IAG has offered for affirmance can't be granted because the court had punted on a lot of those issues and remand would be required. Some of the, I know you don't have to file a cross notice of appeal if you're only offering an alternative basis for affirmance. And that's AIG's basis for assigning additional errors. But in the rebuttal I'll get into why those are, they don't carry the data, they're not permissible at this point. Well counsel, the chief may call you on that. You can't raise things on rebuttal that were not covered either on the opening or by the appellee. Because the appellee gets to respond to everything you raise. Okay. Another 30 seconds. Well then I'll just do it very quickly. I thought he was going to raise them because I haven't raised them. No, but all I'm saying is if you want to deal with it, you better do it now. Okay. Very quickly. Briefly. I wasn't sure because it's not in our, it's not our assignment of error. Okay, so they have argued that there's a wages exclusion. That was specifically identified by the district court as a issue that needed testimony. There was testimony and the court punted in its findings of fact and conclusions of law. So I don't think this court on appeal will make findings of fact that would be required. Even so, we have offered in our brief four reasons why the wages exclusion does not apply. So were you to reach that, I think remand is the only appropriate answer rather than affirming on that basis. The same thing applies to notice. The trial court held that the claim was properly made and reported in a policy year and therefore didn't reach the issues of estoppel and waiver that we said that even if it wasn't properly made and reported, AIG defended and it only had defense obligations pursuant to the same notice provisions. It did it for five years spending God knows how much money, but never asserted the defense against their insured, paid five years of defense costs that were subject to the same provision and then only belatedly asserted against us, which we believe shows that it's a manufactured defense and gives rise to a bad faith claim, which on remand would be the district court would need to go into, which is why here it's not, it's not, you can't affirm on that basis. Thank you. Thank you and you set a time for rebuttal. Mr. Fagan. Good morning. Thank you. Is there any particular place you all want me to begin or shall I just go for it? Well, to me, your opposing counsel said the most significant issue on the legal, central legal question is whether the fact your exclusion refers to written contracts and the LWPA would not require written contracts. How does all that fit together with the exclusion? Sure, Your Honor. I think you, the exception has to be read within principal part of the exclusion and what appellant's counsel has not mentioned, he keeps referencing the phrase express written contract. That is in the principal part of the exclusion, but to Your Honor's point, it says or employment agreement. So the phrase is for any actual or alleged contractual liability of the insured UTC under any express written contract or employment agreement. So that's disjunctive. So it means one or the other can apply. And Judge Southwick, I think that goes to your point earlier that it doesn't say written employment agreement necessarily. But part of it, in getting back to read any ambiguity in favor of the insured, it seems to me that you could read under any express written contract or agreement that the agreement is somehow a variation of the word contract, but it still must be express written. It is express written. I don't think there's any dispute that there is an employment agreement. Well, no, but express written contract or express written agreement. Does that modify to those adjectives? Is that what they are? Also modify agreement. And that gets into terms reading text and whatever. And one way to read that is that the agreement has to be written also. It could be read that way, Your Honor, but I think that in the plain language, it is express written contract or employment agreement. And under Louisiana law, and I believe the law of this Court, or is a disjunctive in that sense. So it's meant to separate clauses under the prevailing jurisprudence. I can give a cite to that under Louisiana law. I don't think I put that in my brief, but that is the premise. I don't think, I submit to the Court, Your Honor, it doesn't make a difference anyway because there is no dispute that both of the appellants had employment agreements with UTC. That's beyond callous. No dispute. And that their only claims for damages here are in connection with, and the phrase, because it's for any actual or alleged contractual liability of UTC under any express written contract or employment agreement. That fits the bill here. So it's written anyway? Pardon me? You're saying it's already, it's written even if it's an employment contract, so it doesn't matter if it's express written? It really doesn't matter. I mean, I don't, the exhibit number, both of their documents are in the record. Does the word express mean anything that's different? Under Louisiana law, I think express is synonymous, generally speaking, with written, or something that is stated and agreed upon as opposed to something that's implied. So if you have, if you You can't have an unexpressed written agreement? Pardon me? You can't have an unexpressed written agreement? I don't see how, but No, I think you're right, Your Honor. You can't have an unexpressed written agreement because it's naturally going to be expressed. I think what you can have is an implied agreement, which I believe was Mr., was Counsel for Appellant's point, that they could have had this hypothetical claim based upon some kind of implied obligations that they didn't have to see under the contract, the two employment agreements, and that's just a false premise. Because under Louisiana law, the only alternative claims, if you don't have a contract claim, and they have never alleged a verbal contract. It's never been alleged here. If you don't have a verbal contract, your only other remedies are detrimental reliance under Louisiana Civil Code Article 1967 or unjust enrichment under Louisiana law. The problem with, for appellants, for both of those, is those remedies are only available in the absence of any contract. You can't have recovery for detrimental reliance or unjust enrichment if there is a contract, which gets us right back to these employment agreements that both of these individuals signed. They've joined Exhibits 3 and 4, and I can give the record citations to you if you'd like, but they're joined Exhibits 3 and 4. Mr. Agee starts at record site 8729, and Ms. Cox starts at record site 8806. They're both written contracts, so there is no other agreement, and they did not seek any damages that were outside of the scope of that agreement except for the Louisiana wage payment damages, which were limited to $30,000 and were only because there was a late payment on their salary, their contract-based salary. So everything comes back to the employment agreement. Any other questions on the breach of contract exclusion? I'll say this about the carve-out doesn't apply because of the reasons that the court, that Judge Elrod Southwick said. I mean, the King case and the Looney-Ricks case, and there's the third case that the court cited, those all . . . you cannot have a Wage Payment Act claim in the absence of some kind of terms of employment, which here is the employment agreements. So that ends that story. Well, Counsel, just to belabor it a bit, it does seem to me that the exception to the exclusion, except for liability, which would have attached in the absence of something. I won't get into that because that's not key to me. In the absence of whatever it is, and here is an express written contract. So you have the LWPA that says, you may have been at this long enough to be able to cite it without looking at it, but any employee who fails or refuses to comply with the provisions of whatever . . . oh, no, that's the wrong section. But anyway, you can sue on whatever the agreement was that you were not paid for. So he used the word hypothetical, opposing Counsel did. I'm not sure that's quite the way to look at it. But it does seem to me one way to read the exception is that had this plaintiff not had . . . it's not a plaintiff here, a cross-claimant, I guess, or something, not had a written contract, would he have had anything? Yes, he would have had the LWPA and he could have sued on that. I think the cases that you cited, Your Honor . . . Say again? I think the cases that you and Judge Elrod cited suggested the contrary. There has to be some express term. I think the statute uses term of employment. But there has to be an agreement. And Looney Ricks doesn't really talk about it. It's a Fifth Circuit case and relying on . . . well, forget what Judge Garza relied on, but Louisiana case law. It does seem to me that it's saying if you can substitute something unwritten and get to the same location, this exception may not apply to the same result, to the same relief. There's a verbal contract. Is that what you're . . . Oral. Oral, not verbal. Verbal just means words, but an oral contract. We don't have an oral contract here, so that's never been alleged. If you're talking in hypotheticals, does express contract or agreement . . . I think express contract or agreement, if you go back to Louisiana law, interpretation generally speaking, I looked at this in the Civil Code, if you search the word express, you'll find that most of the references have something to do with something in writing. So I think express contract or agreement is talking about a writing here. Could it be construed as talking about something else? Are you saying agreement does or does not require writing in your interpretation? I'm saying that the word express, if you look at it in Louisiana Civil Code, typically is referencing a writing. Okay, but I thought you were saying that's limited to express written contract. So I'm agreement in the policy also require writing? That goes back to the prior discussion about the principal part of the language. It says it depends on what express is modifying. It says express contract or agreement. If you put express in front of agreement, it's written, I think. If it's not, it could be verbal, but we don't have a verbal or an oral contract here. So I don't really think we're talking about something that really is a consequence. We have a written employment contract that is why they got severance and retaliation and all of that, right? They had two types of employment. I mean, compensation. They earned compensation for certain earnings that they called commissions, which were due monthly, and they earned other compensation, which they referred to as bonuses. And those came quarterly. And so the bonuses accrued later, but they were due when earned. And that's the point of the employment agreement. All those terms, the payment of the commissions and the bonuses, and including what happens, it's not so much a severance pay. It says if you term us without, if you terminate us without cause, but the remedy is that you have to pay, I think the bonuses through June 30, 2015, they were terminated on April 3, 2015. So they got an extra three months past the termination, essentially, which was really through the one-year contract. That's where it comes into play, because each of them had a one-year contract that expired on June 30, 2015. So they basically, if they were terminated during the initial term, then they got paid for that term, is the point. Well, can you give an example of when this contract exclusion would not apply, just in general? You mean in general? Hypothetical, so that we're not having issues with surplusage. When does the exclusion not come into play? If you've got a detrimental reliance claim, if you've got an unjust enrichment claim, something where there's no . . . you just show up and you do work, and you're not getting paid for it, quantum error, it's something like that. And that was not the situation of these individuals? It was definitely not the situation here. Okay. Then, there's another problem with this case. If the district court set a record on appeal at 7477, as a matter of law, the contract terms are vague and dependent on disputed facts at one point, the district court said that. Is that . . . and then applied the standards for viewing unambiguous provisions. This seems to be some sort of error in the work. How do we reconcile that? I can't reconcile it, Your Honor, to tell you the truth. So, can we say that, assuming arguendo, that that was an error, then applying the . . . that unambiguous provisions say X, and therefore, your claim . . . I think it's . . . Is that what we should do? What should we do? Well, I think it's fair to say that, as you remarked earlier, that the district judge, Judge Fallin, simply changed his mind. I mean, he originally had the impression, based on the motions for summary judgment, that the breach of contract exclusion didn't apply. We go to trial, he hears testimony. I mean, Judge Fallin was very emphatic that I want to hear evidence about this, and then he did. I think if you saw in the record, I asked permission to address the breach of contract ruling. He gave that permission. Then, several, I would say ten or fifteen pages later, the appellants got around to objecting on some basis. Meanwhile, the questions had been asked and answered. Is this section 7477? Is that at the time of the summary judgment, when he said, as a matter of law, or was that during the trial? No. Well, I only recall it, Your Honor, being said before the trial. I don't think he said something like that. I'm not familiar enough with the record. There's nothing of that in the actual judgment, as far as I can tell, is that . . .  This was a preliminary ruling, and then he's saying, oh, I've changed my mind now. I'm not one to give up the ship sometimes, and so I thought we had a valid exclusion, which is why I asked after you heard the evidence in the context. We had the witnesses present and admit, yes, we signed written employment contracts, and went through all the damages that they were awarded, and they were all derivative from the contract. So tenacity paid off in this case? I suppose, yes. Okay. Perhaps. We don't know. Perhaps. Well, at least with the district court. Counsel, let me ask you about an issue that opposing counsel said is not probably before us because it takes some fact determination, but that's whether the claim was made before the . . . was actually made during the earlier policy period that ended in March of 2017. It seems to me that it's going to turn on what the Louisiana definition of making a claim, whatever that concept is, and when you look at the e-mails, including the key one that you rely on, there's a very pleasant discussion of being owed money as opposed to pay me now or I'm going to bring my big lawyer after you. They got around to saying that, Judge, but . . . Both sides well-represented here. But it does seem to me that that would be key. It may not be necessary to get to that. You didn't start with that probably because opposing counsel didn't discuss it. But would you agree that if we were all open that there was a claim made in that earlier period, there are disputed facts either dealing with estoppel, waiver, something else? Well, they didn't raise the estoppel or waiver in their briefs. So it's outside of the record. They didn't appeal that issue, and they did try to argue it before the district judge. But nobody . . . Actually, that is . . . They did raise it. They did brief it at one point in the district court, but it was not raised on . . . To my waiver and estoppel? That was not raised. I don't . . . So I've been doing claims made and reported in cases for a while, and I think that Judge Fallon's decision is dead wrong on how he came down on that. I think that these emails that are before the court from Joint Exhibit 14, 15, 20, 22, and 27 are absolutely demands for payment of money. That's all that the definition requires. And you can look at the record on appeal 8844, 8845. It's the very first email that they sent. I'd like to restate that proposal to include the following provisions. He was referring to a proposal made in a meeting. This is Mr. Agee. Payment of $50,000 each to Shea, Danny, and myself on April 30, 2015. And this email was dated April 18, 2015. So they want money in 12 days. Then it said second and third payments of $25,000 each on May 15 and June 15, 2015. Total of $100,000 each, and then payment of the rest once they get the money collected. It's the last term. This is a demand for money. This is a claim. You will note from the record that virtually with every single one of these emails that the general counsel for UTC, Brandy Sheely, is copied or involved. The last ones, the ones that date from 2017, wherein Mr. Agee ultimately says on March 13, this is the last time you're going to hear from me or words to that effect. And do I need, you know, before I get a lawyer. And that's in March of 2017. So we have six different sets of emails going to UTC. The Gorman v. Opelousa's decision by the Louisiana Supreme Court makes it clear that it's the duty of the insurer to do the reporting. And the insurance company, in this case AIG Specialty, cannot be penalized because somebody with UTC presumably didn't read the policy, didn't read the simple definition of claim being a demand, a written demand for money. These are written demands for money. And they were made during the first policy period. And they didn't report it until September 19, 2017, more than 90 days after the expiration of the first policy. That's why the claims made in reported ruling that Judge Fallin made is dead wrong. He decided that, respectfully, dead wrong. He decided that the complaint that was filed in federal court in early May of 2017, that was somehow the claim. Now, the irony of that is that that was filed. You figure, I mean, they had 90 days after March 31, 2017, to file a give notice of the original claim. You think the message might have gotten through when they get a lawsuit served on them for which they received and signed a waiver of summons in the middle of May. So they still got 45 days to do something and report it to AIG. They do nothing. But we don't need to do anything with this at all? Pardon me? We don't need to do anything with this at all, do we?  I think it's just an erroneous decision. And you don't have to do it to affirm. You are absolutely right. It's an affirmative. It's an alternative. But if we were not inclined to affirm, you would be interested in this issue, right? I would be very interested in you addressing that issue. Let me ask you one last question, maybe, the last part. Is there any issue in here about the direct action nature of this claim by these counterclaimants? You haven't made any issue of that, have you? We did make an issue of it, yes. We did make an issue and they did get a judgment if this had been before the state court judgment. We did make an issue of this before they got the state court judgment. And so, once they receive the state court judgment, there is a provision in the AIG policies, plural, that that's when the no action clause may be circumvented, if they have a judgment. So, December 19, 2022 is when they got the state court judgment and that's after which we filed the deck action. So, Your Honor, I don't think there is a direct action issue because of the contractual provisions in the AIG's policy. The wage exclusion, I'm just going to say, I have a minute and 41 seconds. The wage exclusion clause for the same reasons that the breach of contract does. It's just another alternative basis to affirm. And it goes even more specifically into the reasons why this should be, the lower court's judgment should be affirmed. Because it talks about loss in connection with a claim against UTC, which in whole or in part alleges or arises out of, based on, attributable to, all those words. UTC's refusal, failure, or inability to pay wages. So, it's not just refusal, failure, or inability. I think you've reviewed the emails, the record, even the first emails. Dr. Jolly responded to the April 18, 2015, 17, 15, excuse me, email by state, if we had money we'd pay you. Well, that's an inability to pay. So, these are wages. This exclusion applies because either UTC refused to pay them the wages that were due. And wages is defined very broadly in Louisiana. It's just earned compensation. And there is no doubt that they earned their compensation about this. And they both testified to that, both the appellants testified to that, during the trial of this matter. And that's why, in addition to the breach of contract exclusion, in addition to why this claim was not timely, made and reported, because it's a conjunctive requirement. The wages exclusion is another reason to affirm, should the court feel the need to do so. None of the carve-out exceptions apply, and we've briefed that in some detail. There's the similar one with the, this is not a tort-based claim. This is not a retaliation claim. This is not liability which would have attached in the absence of a contract. None of those exceptions apply here with respect to the wages exclusion. This is a pure wages claim based on employment agreements, for which they also made a claim under the Louisiana Wage Payment Act. And they only had a right to make that claim because they had an agreement. Thank you, Counsel. Thank you, Your Honors. It's true that we wouldn't have had a claim under the Louisiana Wage Payment Act without an agreement. We know we had an agreement. The question is whether we would have had a Louisiana Wage Payment Act claim without an express written agreement, and adequately we would have. So I'd like to walk through a couple of things that we just heard about on the exclusions. Your Honors asked about whether express written, which modifies contract, also modifies agreement. I think very naturally and obviously it does, but even counsel for EIG said it could be interpreted that way. If it could be and it leads to coverage, it must be. We really have to keep in mind that if there is a way to go through this exclusion and find coverage, we're obligated to do so. Well, a reasonable way, I'm sorry, a reasonable way using traditional Louisiana rules of statutory contract construction. So you would have to look at that, maybe even Lou Brian Garner and Scalia on reading text. Right. And so the language we quoted from the Lambert v. Maryland Cash Company is from the Louisiana Supreme Court. It's in the practical effect given to all its parts, according to each the sense that results from the entire agreement, so as to avoid neutralizing or ignoring any of them or treating them as surplusage. Some effect is to be given to every word or clause if possible, for a court may not impute to the parties the use of language without meaning or effect. I don't understand why it matters here because there was an express written employment agreement. Okay. So let me just head on then. Let's walk through the language of the exclusion itself. Okay. So page four of my brief at the bottom where I've quoted the exclusion. It says, this will be the exclusion, for any actual or alleged contractual liability of the company under any express written contract or agreement. Are we there? Yes. So do we acknowledge that so far this exclusion applies? Yes, because this is the liability where there was an express written contract or agreement. Now, under the interpretation taken by AIG and by the district court, you need go no further. I believe one of you asked for an example of when this carve back would have an application. And I think AIG undertook to come up with a few examples here but never did at the district court and certainly never did in their brief. And we believe this is their burden. It's their burden to show how this exclusion operates to exclude coverage. So if we are to take this next clause, provided, however, this exclusion shall not apply to any liability which would have attached in the absence of such express contract or agreement, again, we believe such express contract or agreement is referring to the same clause above that also uses the word written, and which would have attached. So it's a counterfactual, right? The policy is asking you to engage in a counterfactual. Would the liability have attached in the absence of the express written contract? And you're saying, well, it was written, and if there was no contract at all, there's no liability. I understand that. I don't think that's the more plausible interpretation. I think you can very plausibly say, wait a minute, what if that contract had not been express or written? Because those are the words that are being used. If that contract had been oral, would liability have attached? Here the answer is yes. So I've given you an example of where this final clause does work. It does seek to carve something back in, and it's in our situation. You could think of another alternative. Why is that in the situation if that's not what the facts of the case are? The facts? I'm sorry. I understand why unjust enrichment would work. It's a would have. And the fact that also that maybe you could have a situation where there's not a contract, but there is a written contract here. Yes, this word would is saying not liability, which did attach in the absence of such express contract agreement. It doesn't say did attach. It said would have. So the question is, would liability have attached had the contract— In some hypothetical world? I think it is. Now, Judge Southwick thinks it's perhaps not hypothetical, but when you're saying which would have attached, you're admitting the possibility that it didn't, but would or could have. So it is— But it wouldn't or couldn't have if there's a written employment contract. You don't need a written— But there is one. Yes, but had it not been written, would liability have a— Wouldn't that be a different case? But that's the hypothetical that is invited by the exclusion, Your Honor. And I understand you're on the other side of it. I'm not trying to be on the other side from you. I'm trying to figure out the language, interpretations. The question is whether or not I've offered a plausible interpretation, and I think unequivocally we have. You can read this clause to invite the hypothetical inquiry that had the contract not been express written, a.k.a. had it been oral, would there have been liability? Or if there was no contract and the person just did the work on the person's property like the— I suppose that— And you harass and you say, you know, they teach you in contracts law and you adjust enrichment.  That's also true. But because we had an employment agreement, there was an agreement. It's just the issue is could that agreement have existed and could liability have attached had it not been expressed or written? And that is a plausible interpretation and, therefore, does need to be given effect in this instance. Thank you. Thank you.